**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**-vs-**                                                    **Case No.  6:07-cr-11-Orl-28KRS**

**ROBERT ERNEST BISHOP**

_____

## MEMORANDUM ORDER

After a jury found him guilty on a single count of a thirteen-count indictment, Defendant Robert Ernest Bishop filed a post-trial Motion for Judgment of Acquittal (Doc. 69) pursuant to Federal Rule of Criminal Procedure 29(c).  The crux of Defendant's argument is that there is no evidentiary basis to support the crime of which he was convicted as it is charged in the indictment and that allowing the verdict to stand would constitute an improper constructive amendment to the indictment in violation of the Fifth Amendment.  The motion is well taken and must be granted.[1]

## I.  Background

Defendant is the owner and operator of Bob's Complete Landscaping, Inc. ("BCLI"). A grand jury returned an indictment against Defendant charging him with thirteen counts of violating federal tax laws in connection with his operation of BCLI.  The first twelve counts charged felonies for willful failure to accurately collect, account for, and pay over federal employment taxes in violation of 26 U.S.C. § 7202.  Count 13 charged that Defendant

---

[1]Via an endorsed Order on August 6, 2008, the Court granted Defendant's motion and noted that a Memorandum Order explaining the ruling would follow.  (See Doc. 93).  This Order constitutes that explanatory Memorandum Order.

committed a misdemeanor offense in violation of 26 U.S.C. § 7207.

Materiality is an essential element of § 7207, which provides in pertinent part that "[a]ny person who willfully delivers or discloses to the Secretary any list, return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter" commits a criminal offense.  The indictment charged in Count 13 that Defendant willfully delivered invoices to an agent of the Internal Revenue Service ("IRS") that Defendant knew "to be fraudulent and false as to material matters, in that the documents were submitted to substantiate Schedule C deductions on Form 1120S, the corporate tax return for Bob's Complete Landscaping, Inc., for tax year 2001."  (Indictment, Doc. 1, at 3).

During the trial,[2] Defendant timely moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a).  I denied the motion, allowing the jury to consider all charges.  The jury returned a verdict of not guilty on the twelve felony counts but found Defendant guilty of the misdemeanor offense charged in Count 13.  In his renewed motion for judgment of acquittal, Defendant argues that the Government presented no proof of materiality as alleged in the indictment – that the false and fraudulent invoices "were submitted to substantiate Schedule C deductions" on BCLI's corporate tax return.

In response to Defendant's motion, the Government acknowledges that it failed to

---

[2]The defense was focused on Defendant's relationship with Richard Taylor, who had served as Defendant's accountant since 1981 and during that time had handled BCLI's bookkeeping and prepared all tax returns.  Taylor's testimony at trial was shocking.  He admitted to preparing and filing the false invoices in question and to lying to officers of the IRS on several occasions thereafter.  The grand jury was not advised of Taylor's lies and deception because the IRS agents were unaware of his misconduct until Taylor testified at trial.

prove the facts that were alleged in support of the materiality element in the indictment – there was no Schedule C and there were no "Schedule C deductions" – but the Government argues that the language contained in the indictment was surplusage and that proof thereof was not necessary to support a conviction.  According to the Government, because language describing how the false invoices were material was not required to return a valid charge under § 7207, there is no harm in allowing the verdict to stand.  I disagree.

## II.  Legal Standards

Resolution of this case turns on a "shadowy distinction" that exists between an impermissible constructive *amendment* of an indictment and a mere *variance* between the charges contained in the indictment and the proof at trial.  United States v. Jungles, 903 F.2d 468, 475 (7th Cir. 1990) (quoting Charles Alan Wright, Federal Practice & Procedure § 516 (1982)).  Although the distinction between amendments and variances may be subtle, different constitutional rights are implicated.  Amendments to indictments are impermissible under the Fifth Amendment guarantee that only a grand jury may bring criminal charges, while variances implicate a defendant's Sixth Amendment right "to be informed of the nature and cause of the accusation."

In this case, Defendant's primary argument is that his Fifth Amendment rights would be violated if the verdict were allowed to stand.  The Fifth Amendment provides that only the grand jury by issuance of an indictment may require that a citizen answer to serious criminal charges.[3]  "It is the exclusive prerogative of the grand jury finally to determine the charges,

---

[3]"No person shall be held to answer for a capital, or otherwise infamous crime, unless

and once it has done so neither a prosecutor nor a judge can 'change the charging part of an indictment to suit [his or her] own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes.'" United States v. Leichtnam, 948 F.2d 370, 375-76 (7th Cir. 1991) (quoting Ex parte Bain, 121 U.S. 1, 10 (1887)) (alteration in original).  The exclusive power of the grand jury protects citizens from overreaching by their government and is not to be taken lightly.  It is therefore "[t]he settled rule . . . that an indictment may not be 'amended except by resubmission to the grand jury.'"[4]  Id. at 376 (quoting Russell v. United States, 369 U.S. 749, 770 (1962)).

Notwithstanding the rule against amending indictments, two categories of variances from the charges are permissible.  Id. The first category includes changes "that are 'merely a matter of form.'"  Id. (quoting Russell, 369 U.S. at 770).  Such changes include a correction of "a typographical or clerical error or a misnomer."  Id.  Also, "unless the particular date is an important element of the charged offense," the date in an indictment may be changed as long "as the evidence shows that the offense was the one charged and that it was committed on a date before the indictment and within the statute of limitations."  Id.  Rounding out the first category of permissible changes to an indictment are instances where there are inconsistencies "between the proof and the charges amounting to no more than a simple

_____

on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V.

[4]This rule has also been applied to misdemeanor offenses charged by indictment. See Russell v. United States, 369 U.S. 749 (1962) (holding that indictments charging the misdemeanor offense of refusing to answer questions when summoned before a congressional committee pursuant to 2 U.S.C. § 192 were insufficient where they did not identify the subject under inquiry at the time).

matter of semantics." Id.  In such cases, the inconsistencies "will not always constitute an amendment – provided that any difference between the two does not result in making a conviction possible on bases that the grand jury did not charge." Id.

The second category of permissible variances consists of instances where there is narrowing – as opposed to broadening – of the charges contained in the indictment. Generally speaking, "a conviction will not ordinarily be upset because the proof at trial or the jury instructions cover fewer offenses than the indictment charged or only narrower or 'lesser included' offenses." Id. at 377.  Such narrowing can occur when one or more of multiple charges contained in an indictment are withdrawn while the other charges are submitted to the jury for a verdict.  Id. at 376.  Permissible narrowing also occurs when the same indictment charges more than one commission of the same offense or more than one way of committing the same offense.  Id.; see, e.g., United States v. Simpson, 228 F.3d 1294, 1299-1300 (11th Cir. 2000) (holding that an instruction permitting a conviction upon proof that defendant "used or carried" a firearm does not constitute an amendment to an indictment charging "used *and* carried" a firearm).  And, in conspiracy cases, narrowing occurs when not every single fact in the indictment is established but the evidence at trial nonetheless "proves the same criminal acts as charged in the indictment, or a subset of them."  Id. at 377.  In these instances the constitutional prerogative of the grand jury is not offended.

Notwithstanding these two categories of exceptions allowing for variances as to the form of the document and the narrowing of charges, it is clear that an indictment "may not be broadened[] so as to present the trial jury with more or different offenses than the grand

jury charged." <u>Leichtnam</u>, 948 F.2d at 377 (emphasis removed).  A defendant has the "substantial right to be tried only on charges presented in an indictment returned by a grand jury." <u>Stirone v. United States</u>, 361 U.S. 212, 217 (1960).  That right is violated when the indictment is constructively amended by "broadening the possible bases for conviction from that which appeared in the indictment." <u>United States v. Miller</u>, 471 U.S. 130, 138 (1985) (emphasis removed).  A constructive amendment constitutes per se reversible error.  <u>See United States v. Stuckey</u>, 220 F.3d 976, 981 (8th Cir. 2000).

## III.  Application

Applying the law to the facts of this case, I conclude that allowing the verdict to stand would constitute a constructive amendment of the indictment in violation of the Grand Jury Clause of the Fifth Amendment.  Materiality is an essential element of a § 7207 offense, and the indictment in this case specifically described how that element was met – in that the fraudulent invoices "were submitted to substantiate Schedule C deductions on Form 1120S." Because the indictment specifically alleged how the documents were material, the Government was bound to proving those facts, and it has admittedly failed to do so. Moreover, unlike in most of the cases discussing the distinction between amendments and variances, the jury in this case was instructed that a guilty verdict required a finding that the invoices were material "as charged in the indictment."  No such evidence was presented at trial.

The Government correctly notes that it was not necessary that the indictment be drafted to specifically describe how the false statements were material.  Accordingly, argues

the Government, the descriptive language should be construed as mere surplusage, proof of which was unnecessary to support a verdict of guilt.  In other words, the Government asserts that the failure of proof as to how the false invoices were material constitutes an insubstantial variance and should be overlooked.  I do not accept this argument.  The grand jury chose to draft the indictment in specific detail, and those charges may not later be broadened by the judge or trial jury by not requiring proof that the invoices "were submitted to substantiate Schedule C deductions" on BCLI's corporate tax return.  It is presumptuous to assume that the grand jury would have returned the indictment under any theory of materiality other than that the invoices were offered to substantiate Schedule C deductions. The fact that there is no such thing as a Schedule C to a corporate income tax return is of no consequence in this analysis.

Appellate courts have generated many opinions grappling with the difference between variances and amendments; nevertheless, the distinction between the two remains "shadowy," and no easy-to-apply formula for resolution has yet evolved.  It is clear, however, that language going beyond what is necessary to describe an element of an offense does not necessarily qualify as mere surplusage not requiring proof.  This point was clearly made by the Supreme Court in its landmark decision in Stirone v. United States, 361 U.S. 212 (1960).  The defendant in Stirone was charged with violating the Hobbs Act (18 U.S.C. § 1951) by interfering with interstate commerce involving the importation of sand.  Id. at 213. Over the objections of defense counsel, the trial court allowed evidence relating to the exportation of steel.  Id. at 214.  At the conclusion of the trial the district judge instructed the jury that it could find the defendant guilty on evidence that he illegally exported steel.  Id.

The Supreme Court, however, ruled that broadening the scope of the indictment to permit conviction based on conduct other than that alleged was "neither trivial, useless, nor innocuous," and it "destroyed defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." Id. at 217.  The Court noted that an indictment drawn in general terms may have supported a conviction based on either importation of sand or exportation of steel, but the indictment charging the particular commerce of importing sand would not support a conviction involving exportation of steel. Id. at 218.

Other courts have also rejected the notion that facts gratuitously alleged in an indictment necessarily qualify as surplusage.  For instance, the Seventh Circuit in Leichtnam determined that the trial court had impermissibly amended the charges contained in the indictment.  There, the indictment charged that the defendant "did knowingly use and carry a firearm, to wit:  a Mossberg rifle, Model 250CA," in violation of 18 U.S.C. § 924(c).  948 F. 2d at 374.  Three firearms were displayed to the jury during trial, one of which was a Mossberg rifle.  Id. at 379.  At the conclusion of the trial, the district judge instructed the jury that it could return a guilty verdict if it found that the defendant had possessed any one of the three firearms it had been shown during the trial, even if it was not the Mossberg rifle as charged in the indictment.  Id.  In reversing the conviction, the circuit court noted that the government could easily have drafted an indictment that simply charged that defendant had used or carried a firearm, but it instead specifically charged that he possessed a "Mossberg rifle, Model 250CA."  Id.  By specifically describing the rifle, the Government made that description an "essential part of the charge" and eliminated the possibility that he might be

convicted of possessing any other firearm.  Id.

The Eleventh Circuit reached a similar result in reversing a conviction for money laundering in United States v. Cancelliere, 69 F.3d 1116 (11th Cir. 1995).  The indictment charged that the defendant "knowingly and willingly" committed the offense.  Id. at 1120.  At the close of the evidence, the Government moved to strike the word "willfully" from the indictment, and, over objection, the district judge allowed the redaction.  Id.  The instructions given to the jury at the close of the trial did not contain "willfulness" as an element of money laundering.  Id.  The Eleventh Circuit held that the trial court erred by impermissibly broadening the basis upon which the defendant could be convicted.  Id. at 1121-22.

In United States v. Hoover, 467 F.3d 496 (5th Cir. 2006), a case similar to the one at hand, the defendant was charged with making a false statement to an FBI agent in violation of 18 U.S.C. § 1001.  The indictment alleged that defendant "stated and represented that only one person had complained of 'double flooring' of vehicles . . . when in truth and in fact [defendant] then and well knew that more than one individual had told him about the 'double flooring' of vehicles."[5]  Id. at 498 (first alteration in original).  Disregarding the language contained in the indictment, the district judge instructed the jury that it could return a guilty verdict if it found that the defendant had "stated that only one person had complained of 'double flooring' of the vehicles and that such statement was intentionally false."  Id. at 500.  As in the case at bar, the Government argued that "[b]ecause the jury instruction did not modify any element of the offense," there was no constructive amendment of the indictment.

---

[5]As the Hoover court explained, "double flooring" is "an illegal practice whereby a single vehicle is used as collateral for more than one loan."  467 F.3d at 497.

Id. at 501-02.  The appellate court rejected the argument, finding that the instruction did constructively amend the indictment.  Id. at 502.

In each of these cases, the indictments were drawn more narrowly than necessary to meet the statutory requirements.  The appellate courts found that the gratuitously alleged facts required proof to sustain a guilty verdict.  In the absence of such proof, allowing a guilty verdict to stand would constitute an improper amendment to the indictment in violation of the Grand Jury Clause of the  Fifth Amendment.  The same is true in this case.

### IV.  The Government's Contentions

The Government responds to this line of cases by arguing that United States v. Robinson, 974 F.2d 575 (5th Cir. 1992), is directly on point and requires denial of Defendant's motion.  Indeed, there is dicta in Robinson that supports the Government's position that it is not required to "'prove all facts charged in the indictment as long as it proves other facts charged in the indictment which do satisfy the essential elements of the crime.'"  Id. at 578 (quoting United States v. England, 480 F. 2d 1266, 1269 (5th Cir. 1973)).  Nevertheless, I find Robinson distinguishable from the instant case.

The Robinson indictment charged income tax invasion in violation of 26 U.S.C. § 7201, alleging that the defendant "did willfully attempt to evade and defeat a large part of the income tax due and owing by her and her spouse . . . by causing to be filed, a false and fraudulent joint U.S. Individual Income Tax Return, Form 1040 . . . ."  Id. at 577.  The defendant was convicted, and on appeal she argued that the Form 1040 had never been signed and therefore was not a "return" as that term is defined by law.  Id.

-10-

The Fifth Circuit rejected the defendant's argument, finding that it did not matter whether the document filed was a "return" or not so long as the Government established that it was filed in an attempt to evade defendant's tax.  Id. at 578.  The court noted that the elements of a § 7201 offense are "(1) willfulness, (2) a tax deficiency, and (3) an affirmative act of evasion or attempted evasion of the tax."  Id. at 577.  The court determined that it was not necessary that the Government prove that the document filed satisfied the legal definition of a "return"; the assertion in the indictment that a false "return" had been filed was "mere surplusage."  Id. at 578.  Relying on Robinson, the Government urges me to conclude that the indictment's reference to "Schedule C" is also mere surplusage and need not be proven to support a conviction under § 7207.

Robinson turned on a question of semantics – whether the document filed with the IRS was technically a return as that term is defined under the law because it had not been signed by the defendant.  Unlike the requirements of § 7207 tax evasion, the elements of § 7201 do not include a requirement of materiality.  The bottom line was that the defendant was guilty of tax evasion whether the unsigned document was an income tax return or not.  By contrast, § 7207 specifically includes an element that a defendant has delivered to the IRS of a statement known by the defendant "to be fraudulent or to be false as to any material matter."  In this case, the indictment specifically described how the false invoices were material.

In Robinson, there was no dispute that competent evidence was submitted to the jury establishing the elements of § 7201 as instructed.  Here, just the opposite is the case – the jury was instructed that to return a guilty verdict it must find that the invoices were "false in

a material way as charged in the indictment," to wit:  that Defendant knew the invoices were false "as to material matters, in that the documents were submitted to substantiate Schedule C deductions."   The Government agreed that this instruction be given as to the § 7207 offense charged in Count 13 and now agrees that there was no evidence supporting the alleged reason the grand jury believed the false and fraudulent invoices were material.

Finally, it is not clear from the <u>Robinson</u> opinion that the court analyzed the issue with the Fifth Amendment in mind.  The opinion is devoid of discussion of the Grand Jury Clause of the amendment.  Instead, the court engaged in a Sixth Amendment analysis, discussing whether, as a result of the variance, the defendant was prejudiced by surprise at trial or placed at risk of double jeopardy in violation of his right to "be informed of the nature and cause of the accusation."   <u>See id.</u> at 578 ("A variance is material if it prejudices the defendant's 'substantial rights,' either by surprising the defendant at trial or by placing the defendant at risk of double jeopardy.").  There are many other reported cases considering Sixth Amendment issues of fair notice and double jeopardy resulting from variances between pleadings and proof, the outcome of which turns on whether defendants are prejudiced by the variances.

The Defendant in this case, however, bases his argument on the Grand Jury Clause of the Fifth Amendment.   When timely challenged, a constructive amendment to an indictment "requires relief without consideration of prejudice . . . because it directly violates the Fifth Amendment right not to 'be held to answer for a capital or otherwise infamous crime, unless on presentment of an indictment of a Grand Jury.'"  3 Charles Alan Wright, Nancy J. King, and Susan R. Klein, Federal Practice and Procedure § 516, at 46 (3d ed.

2004).

## V.  Conclusion

In this case, the jury could not have found that the defendant submitted a "document that was false in a material way as charged in the indictment," because the Government offered no evidence that the Defendant filed a Schedule C for which deductions could have been substantiated.  Because there was no evidence in support of the element of § 7207 materiality that was asserted in the indictment, the jury, by its verdict, broadened the indictment.  Denying Defendant's motion and allowing the verdict to stand under these circumstances would have the same effect as an instruction impermissibly amending the Indictment.

In accordance with the foregoing, Defendant's Motion For Judgment of Acquittal (Doc. 69) is granted.  A judgment of acquittal will be separately entered in accordance with the jury's verdict and this Order.

**DONE** and **ORDERED** in Orlando, Florida on this 28th day of August, 2008.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Robert Ernest Bishop